UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CRYSTAL D. BAUGHMAN, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | CASE NO. 1:04-cv-1400-DFH-JMS |

ENTRY ON JUDICIAL REVIEW

Plaintiff Crystal D. Baughman brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits and supplemental security income. Acting for the Commissioner, an Administrative Law Judge determined that Ms. Baughman suffered from severe impairments. The ALJ denied her claim, however, because he found that she was capable of performing sedentary work. As explained in detail below, the court finds that the ALJ did not adequately consider evidence that supports Ms. Baughman's claims and conducted the hearing in a manner that did not allow for full and complete testimony by her primary treating physician. The court remands this matter to the Commissioner for further consideration.

*Background*

Ms. Baughman was born in 1975. She has a long history of serious heart problems, beginning with a congenital heart lesion called de-transposition of the great vessels. Normally, the aorta comes off the left ventricle and supplies oxygenated blood to the entire body. The pulmonary artery comes off the right ventricle and carries blood to the lungs to exchange carbon dioxide and oxygen. In Ms. Baughman's heart, the two vessels were switched. R. 53. At the age of eighteen months, she had heart surgery to correct this defect. At the age of nine, her heart's normal "pacemaker" was not functioning properly (called sick sinus syndrome), so she had a pacemaker implanted. R. 17, 76.

Ms. Baughman completed school through only the ninth grade. She married in November 1993. She was employed periodically but was predominantly a housewife. Ms. Baughman has past work experience as a waitress, retail salesperson, day care attendant, and telemarketer. R. 15. She had two different periods in which she met the work and earnings requirements to qualify for disability insurance under Title II of the Social Security Act: April 1, 1994 to June 20, 1997, and April 1, 1998 to June 30, 1999. R. 49.

In August 1996, Ms. Baughman had a heart catheterization that revealed a severe vena cava obstruction. On September 5, 1996, Ms. Baughman underwent surgery for a superior vena cava to left atrium bypass, a pacemaker

generator change, and placement of ventricular and atrial electrical leads for the pacemaker.  R. 18.

A repeat cardiac catheterization was done April 1, 1998 and no obstruction was found.  Ms. Baughman was hospitalized from April 10, 1998 to April 16, 1998, for swelling and tingling of the right thigh at the catheterization site.  She had been having fatigue, dizziness and headaches for months.  An ultrasound revealed a large thrombosis on the right common femoral and external iliac veins.  During this hospital stay, Ms. Baughman was diagnosed with antiphospholipid syndrome, which is a clotting disorder.  At the end of her hospital stay, the clot had resolved.  R. 18-19.

Ms. Baughman was hospitalized again from April 12 – 19, 1999 for further evaluation of dyspnea and tachyarrhythmia (fast heart rate).  In addition, she had recently miscarried.  In November 1999, she underwent surgery for replacement of her pacemaker pulse generator system.  At that time she was pregnant.  Ms. Baughman gave birth in May 2000 to a healthy baby girl.  She later had two more miscarriages in December 2000 and April 2001.  R. 19-20.

According to a June 13, 2002 letter written by Dr. Joyce Hubbard, Ms. Baughman's primary treating physician, Ms. Baughman will always have limitations in her ability to work because she does not have normal aerobic endurance.  She cannot perform any heavy weight-lifting activities.  Due to her

clotting disorder, prolonged standing or sitting is not recommended. Ms. Baughman takes medication for chronic pain, her cardiac function, and the clotting disorder. She requires periodic clinic visits for pacemaker testing, as well as surgeries to replace the pacemaker and/or leads as needed. R. 341.

Ms. Baughman testified at the hearing that it was difficult for her to stand or sit for a long period of time and that she got tired very easily. She testified she did not vacuum her house. At times, depending on how she felt, she did laundry, went grocery shopping, and performed other household chores. Ms. Baughman testified she did not know from day to day how she was going to feel, and that she had lost jobs because of this. R. 57, 59, 60, 62.

Ms. Baughman applied for disability insurance benefits and for supplemental security income on February 14, 2001. The claims were denied initially and were on reconsideration. An ALJ conducted a hearing on March 18, 2003. On November 25, 2003, the ALJ issued his decision denying benefits. On January 26, 2004, Ms. Baughman requested a review of the hearing decision. On May 16, 2004, the Appeals Council upheld the ALJ's decision and denied Ms. Baughman's request for review.

Ms. Baughman then filed this action for judicial review, which has experienced unusual and unfortunate delays. By consent of the parties, the case was referred to Magistrate Judge Shields under 28 U.S.C. § 636(c). On

November 9, 2004, the matter was remanded on motion of the Commissioner because the administrative record was incomplete. Judicial review was then reopened on March 16, 2005. After the Commissioner filed the record and an answer, the case was dormant for nearly a year. On March 6, 2006, Judge Shields ordered Ms. Baughman to file a brief in support of her complaint no later than April 3, 2006. Ms. Baughman missed that deadline, and Judge Shields ordered her to show cause as to why the case should not be dismissed. Ms. Baughman did not respond, and Judge Shields dismissed the case on April 19, 2006. On April 24, 2006, Ms. Baughman moved to set aside the dismissal, and Judge Shields granted that relief. Ms. Baughman filed her brief on July 13, 2006. After three extensions of time, the Commissioner filed her brief on November 13, 2006. A reply brief was filed by Ms. Baughman on January 19, 2007, but Judge Shields retired in late January. The parties' consent and the order of reference were specific to Judge Shields, so the case has been returned to the district judge for decision.

*Disability Standards and Judicial Review*

To qualify for either disability insurance benefits or supplemental security income, a claimant must be disabled as that term is defined by the Social Security Act, that is, unable to engage in substantial gainful activity due to a medically determinable impairment that can be expected either to cause death or continue for at least twelve continuous months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). To

determine whether a claimant is disabled, the ALJ must apply the following five-step inquiry:

    (1)    Has the claimant engaged in substantial gainful activity?  If so, she was not disabled.

    (2)    If not, did the claimant have an impairment or combination of impairments that are severe?  If not, she was not disabled.

    (3)    If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, she was disabled.

    (4)    If not, could the claimant do her past relevant work?  If so, she was not disabled.

    (5)    If not, could the claimant perform other work given her residual functional capacity, age, education, and experience?  If so, then she was not disabled.  If not, she was disabled.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); see generally 20 C.F.R. § 404.1520.  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

      The ALJ determined at step one that Ms. Baughman was not performing substantial gainful activity.  At step two, he determined that Ms. Baughman had severe impairments of transposition of the great arteries, congenital anomalies of the heart, arrhythmia, and antiphospholipid syndrome.  (The ALJ found that she also had an adjustment disorder with a depressed mood that did not limit work activity.)  At step three, the ALJ concluded that the severity of these impairments, singularly or in combination, did not meet or equal any one of the impairments

listed in Appendix 1, Subpart P, Regulation No. 4. ("the Listings"). At step four, the ALJ found, based on testimony from the vocational expert, that Ms. Baughman's past work experience did not meet the requirements of the regulations to be considered past relevant work. At step five, the ALJ concluded that Ms. Baughman had the residual functional capacity to perform the full range of sedentary work.

On judicial review of the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld "so long as substantial evidence supports them and no error of law occurred." *Dixon*, 270 F.3d at 1176. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). However, the ALJ must articulate her analysis of the evidence in her decision. While she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

*Discussion*

Ms. Baughman challenges two of the ALJ's findings. She first argues the ALJ failed to develop a sufficient record for finding that she did not meet or equal a Listing and erred in finding that she did not meet or equal a Listing at step

three. Second, she argues that the ALJ erred at step five in determining that she had the ability to perform sedentary work.

I.   *ALJ's Listing Decision at Step Three*

Ms. Baughman claims that the ALJ failed to develop an adequate record to substantiate his decision at step three. At the end of the hearing, the ALJ gave Ms. Baughman an opportunity to submit additional medical records and a memorandum. She submitted those materials, but the ALJ did not hold any further hearing. Ms. Baughman argues that the ALJ should have held an additional hearing so that the medical expert and the vocational expert could address that additional evidence.

The ALJ never specifically said that an additional hearing would be held. The ALJ stated his intention to review the additional submissions: "I'll read it and if I agree with his theory, we're in business. If not, I might ask more questions or I – we're out of business." R. 104. After the ALJ's review of the additional documents submitted by Ms. Baughman, he apparently did not have further questions and made his decision based on the record before him. The ALJ did not mislead Ms. Baughman as to whether he would hold an additional hearing.

Ms. Baughman also argues that the ALJ conducted the hearing in a manner that made it virtually impossible to develop fully the record of her serious heart ailments. She complains in particular about the ALJ's treatment of her primary

treating cardiologist, Dr. Hubbard. Ms. Baughman states that Dr. Hubbard "really could never fully describe in medical terms the severity of Ms. Baughman's condition although [she] attempted to on many occasions." Pl. Br. at 6. The transcript shows reveals that the ALJ did indeed conduct the majority of both the direct and cross-examination and that he frequently interrupted Dr. Hubbard's answers with new questions or comments, or even questions to another witness. The ALJ's interruptions of Dr. Hubbard's testimony repeatedly directed the focus of the hearing away from Ms. Baughman's condition and to the ALJ's own heart conditions and medical experiences.

The court understands that some informality may help people deal with a stressful situation. In this case, however, the ALJ's repeated interruptions and distractions effectively prevented development of a full record at the hearing where the medical expert and vocational expert were available to address the evidence. See R. 72-104. The plaintiff has the burden to prove that her impairments met or medically equaled a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Meeting that burden becomes nearly impossible when a hearing is conducted in this manner. Additionally, the testimony by the medical and vocational experts was not based on all the relevant medical evidence because they did not see the submissions by Ms. Baughman after the hearing. The ALJ has a duty to develop the record, and a remand is necessary if the ALJ has failed to fulfill that duty with respect to material information. *E.g., Barnett v. Barnhart,*

381 F.3d 664, 669 (7th Cir. 2004).  The court finds reversible error in the manner in which the hearing was conducted and the record was developed.

For her substantive challenge to the ALJ's finding, Ms. Baughman argues that she met or equaled Listing 4.04 for ischemic heart disease, Listing 4.05 for recurrent arrhythmias, and Listing 4.06 for symptomatic congenital heart disease with recurrent arrhythmias.  Ms. Baughman argues the memorandum of counsel and additional medical evidence submitted to the ALJ after the hearing all provide sufficient medical information to prove that she met or equaled the Listing requirements.  The ALJ found that Ms. Baughman's impairments of transposition of the great arteries, congenital anomalies of the heart, and arrhythmias did not meet or equal any of the Listing requirements.  His sole explanation for that decision was that it was "according to the testimony of the medical expert" and that he "agreed."  The medical expert's testimony in this area was minimal:

> Judge, I'm up to, I'm up to April, '98 and its only been mentioned, I think, once.  And I think she was having trouble with obstruction in one of the veins returning blood to the heart, and, you know, we don't have any treatment from emergency rooms, and things like that, that would put the arrhythmia's at a, at a listing level.

R. 75-76.  The problem is that this testimony was based only on the medical records before him at the time, without the benefit of those later submitted by Ms. Baughman.

Again, it is the ALJ's duty to fully develop the record and he "must articulate, at least at some minimum level, his analysis of the evidence to allow the reviewing court to trace the path of his reasoning. . . ." *Caviness v. Apfel*, 4 F. Supp. 2d 813, 822 (S.D. Ind. 1998). Without more, the court cannot find that substantial evidence in the record supports the ALJ's finding at step three. The Commissioner needs to give complete consideration to the step three issues, in light of the entire medical record.

II.     *Capacity for Sedentary Work at Step Five*

Ms. Baughman also argues the ALJ erred in the step five determination that she could perform sedentary work. She complains that the ALJ improperly focused on her pregnancies and her ability to engage in daily and social activities. Encompassed in this assignment of error is Ms. Baughman's argument that the ALJ ignored the testimony and opinions of her treating physician, Dr. Hubbard, without articulating why he did so. Additionally, Ms. Baughman argues that the ALJ improperly discredited her subjective statements and testimony.

The ALJ found that Ms. Baughman was a younger individual with a limited education and no past relevant work. He determined that she had the residual functional capacity to perform the full range of sedentary work. Those findings direct a finding of not disabled under Medical-Vocational Rule 201.24. The ALJ noted statements on the physician's form for state assistance completed September 8, 2000 by Dr. Hubbard. Dr. Hubbard indicated that Ms. Baughman

could not do any heavy lifting and needed frequent rest periods, and that she doubted Ms. Baughman could do any full- time job.  The ALJ reasoned that Dr. Hubbard's opinion was not inconsistent with a finding that Ms. Baughman could perform sedentary work and that there was no objective evidence supporting the doctor's opinion that she could not do any full-time job.  The ALJ also referred to a letter from Dr. Hubbard on October 1, 2003 concluding that Ms. Baughman might be able to do some work, but with frequent absences for health reasons, and the limitations imposed because of her impairments significantly affected her ability to function in the work force and to find a job in which she could perform consistently.  The ALJ disagreed with Dr. Hubbard's assessment that Ms. Baughman would have frequent absences from full-time sedentary work, and instead found that Ms. Baughman's ability to care for a small child and to do housework contradicted that opinion.  The ALJ also noted that Dr. Stump, the medical expert, testified he believed Ms. Baughman could perform sedentary work on a consistent basis.  However, Dr. Stump provided no factual testimony to support his conclusion.  When he gave this opinion, he also did not have the benefit of the additional documentation later submitted by Ms. Baughman.

The ALJ considered Ms. Baughman's testimony but chose not to credit her "allegations" that her pain and/or other functional limitations were so severe as to preclude her ability to work on a sustained basis.  The ALJ stated that he found no other evidence in the record to support her claim.  In making his finding, the ALJ did not specify the "other functional limitations" to which he was referring.

The ALJ cited various portions of the medical records in support of his conclusion that Ms. Baughman could perform sedentary work. However, he did not at any time address the issue of how Ms. Baughman's chronic fatigue would affect her ability to perform even sedentary jobs. The medical records cited by the ALJ consistently note Ms. Baughman's complaints of fatigue or tiredness. The hearing transcript and the Daily Activities Questionnaire reveal that same common symptom of fatigue or tiredness throughout. Additionally, Dr. Hubbard testified that Ms. Baughman takes Inderol for her headaches and arrhythmia, and the drug is known to cause fatigue. R. 75. It is not clear from the ALJ's decision if fatigue is the "functional limitation" to which he referred. What is clear is that the ALJ's decision contains no discussion of the chronic fatigue and tiredness experienced as a result of Ms. Baughman's serious heart condition, nor did the ALJ discuss the issue specifically in relation to her residual functional capacity. This failure to address this major issue (which Dr. Hubbard repeatedly tried to explain, only to be interrupted by the ALJ) requires a remand. "Our cases consistently recognize that meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

Ms. Baughman also argues that the ALJ took out of context statements in the medical records that she was "feeling much better," "doing reasonably well," or "doing well," and the like. The court agrees with her that those comments must be taken in the context of her serious heart condition and that the circumstances

under which the doctors made these comments. The court agrees. She was doing "better" or "well," but compared to what? Not compared to a person with a normal heart. Doctors made these comments after a surgery, adjustment to the pacemaker, pregnancy, or other medical procedure. The comments were also often accompanied by the doctor's notation of complaints of fatigue or tiredness. For example, in a letter dated May 30, 2000, several months after an operation to replace her pacemaker's pulse generator, Dr. Hubbard wrote: "Crystal seems to be doing well." One sentence later, she wrote: "I have encouraged her to continue to try to rest as much as possible." Subjective statements such as those cited by the ALJ must be taken in the context in which they are made, especially given Ms. Baughman's very serious heart condition. See, *e.g.*, *Herron v. Shalala*, 19 F.3d at 333 (ALJ may not select and discuss only the evidence that favors the ultimate conclusion).

Ms. Baughman also challenges the ALJ's reliance on her ability to perform daily activities and her five pregnancies (only one of which she carried past the first trimester to term) to support his finding that she could perform sedentary work. "The fact that she is able to perform the daily and social activities as shown in the record and in her testimony tends to show that she does have have [sic – should be "does not have"] intractable pain or any other functional limitation so severe that she is unable to perform work activities on a sustained basis." R. 22. In explaining his reason for disagreeing with Dr. Hubbard about Ms. Baughman's inability to work a full-time job without disqualifying absence, the ALJ referred

only to the evidence of Ms. Baughman's ability to perform activities of daily living, such as caring for her child and doing housework. R. 23. "Where an ALJ only expresses the claimant's ability to perform day-to-day activities in support of his finding that the claimant is not credible, courts have been hesitant to find that substantial evidence supported the ALJ's decision." *Luna v. Massanari*, 2001 WL 987860, at *4, 75 Soc. Sec. Rep. Service 131 (S.D. Ind. 2001) (Tinder, J.), citing *Eback v. Chater,* 94 F.3d 410, 413 (8th Cir. 1996) (the ALJ committed reversible error by finding that claimant's activities of "taking care of personal needs," was inconsistent with her testimony that she is unable to work where no other evidence supported the ALJ's conclusion); *Jones v. Apfel*, 997 F. Supp. 1085, 1092 (N.D. Ind. 1997) (ALJ committed reversible error by finding that claimant was not disabled by depression based only on the claimant's ability to perform daily physical activities without conveying other analysis in his decision); *Scott v. Shalala*, 879 F. Supp. 109, 113 (D.D.C. 1995) ("The Secretary should not penalize Plaintiff for attempting to sustain a minimal lifestyle, despite her physical impairments."). Based on the foregoing authority, the court agrees that the ALJ improperly relied on daily activities as a basis for finding Ms. Baughman able to handle substantial gainful activity on a consistent basis.

The court also shares Ms. Baughman's concern that the ALJ improperly focused on her five pregnancies. While not emphasized in his decision, the pregnancies were a major focus of the ALJ's questions and interruptions during the hearing. The ALJ repeatedly referred to Ms. Baughman's five pregnancies and

questioned how it was "that she can absorb that stress and that, all that force in nine months, but she cannot, she cannot apply that stress, or accept that stress, in work?" R. 66. Dr. Hubbard tried to explain that all but one of the five pregnancies resulted in miscarriages very early on, before there would be stress on the heart, which is more likely occur in the third trimester. The doctor was also clear that during the complete pregnancy, Ms. Baughman was monitored on a close basis and a significant amount of bed rest was recommended. The doctor also stated that pregnancy was not recommended given her condition. Ms. Baughman took that risk and had a healthy baby, fortunately surviving herself with minimal complications. The ability to go through a high-risk pregnancy with lots of bed rest does not provide substantial support for the finding that she had the ability to handle a full-time job on a consistent basis.[1]

*Conclusion*

The ALJ's determination that Ms. Baughman's impairments did not meet or equal a listed impairment at step three is not supported by substantial evidence. The ALJ failed to fully develop the record by improperly dominating the hearing. In addition, the ALJ failed to articulate sufficiently his reasons for finding that Ms. Baughman did not meet or equal a Listing. At the step five determination, the ALJ failed to account for the uncontroverted evidence of

---

[1] The ALJ's finding that Ms. Baughman could do sedentary work was also based on his rejection of Dr. Hubbard's opinion that Ms. Baughman should avoid prolonged standing or sitting because of her life-long blood clotting disorder. See R. 23. The ALJ did not provide a substantial reason for rejecting this opinion.

-16-

chronic fatigue resulting from Ms. Baughman's heart condition.  The ALJ improperly extracted statements out of context in relying on comments contained in the medical evidence.  The ALJ also gave undue weight to Ms. Baughman's ability to engage in activities of daily living and her pregnancies.  There is not substantial evidence to support the ALJ's decision in step five.  The decision of the ALJ is hereby REMANDED to the Commissioner for further findings consistent with this order.  The court respectfully recommends that the Commissioner assign a new ALJ to conduct the hearing.

So ordered.

Date: February 28, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

C. David Little
POWER LITTLE & LITTLE
powerlittl@accs.net